**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| FACETOFACE BIOMETRICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Civil No. 4:26-cv-01534<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff FaceToFace Biometrics, Inc. ("FaceToFace"), by and through its attorneys, for its Complaint against Defendant Apple, Inc. ("Apple") alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, of FaceToFace's United States Patent No. 12,536,263 (the "'263 Patent"), which covers systems and methods for providing security and privacy for the sender of an electronic message by using biometric recognition to control when a privacy shield covering a notification preview is deactivated. This action is based on Apple's manufacture, use, importation, offer for sale, and sale of devices in the United States that infringe the '263 Patent, including the "Infringing Devices" listed in *Exhibit 1*, which use Face ID or Touch ID biometric authentication to control the display of notification previews on lock screens.

**JURISDICTION AND VENUE**

2. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3. This Court has personal jurisdiction over Apple consistent with the Missouri long-arm statute, Mo. Rev. Stat. § 506.500, and the Due Process Clause of the United States Constitution.

4. Apple has purposefully availed itself of the privilege of conducting business in the State of Missouri and in this District. Apple owns, leases, and operates at least two retail stores in this District: Apple West County, located at West County Center in Des Peres, Missouri, and Apple Saint Louis Galleria, located at the Saint Louis Galleria in Richmond Heights, Missouri (collectively, the "Apple Stores").[1] Apple is also registered with the Missouri Secretary of State to transact business in Missouri. [2]

5. Apple has committed and continues to commit acts of patent infringement within Missouri and this District. These acts include importing, using, selling, and offering to sell the Infringing Devices at the Apple Stores, through Apple's website and online store to customers in this District, and through authorized resellers and carriers in this District. Plaintiff's claims arise out of and relate to these activities.

6. Apple has placed the Infringing Devices into the stream of commerce knowing and intending that they would be purchased and used by consumers in Missouri and this District. Apple also provides instructions, advertising, technical support, and in-store training sessions at

---

[1] *Apple Retail Stores, United States*, APPLE, https://www.apple.com/retail/storelist/ (last visited on May. 21, 2026).
[2] MO. SEC'Y OF STATE, Bus. Servs. Div., *Business Entity Detail: Apple Inc*. (last visited July 6, 2026), https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail.aspx?page=beSearch&ID=489181.

the Apple Stores that induce customers in this District to use the Infringing Devices in an infringing manner.

7. Given Apple's continuous and systematic in-state commercial activities, including its operation of physical retail locations in this District, exercising personal jurisdiction over Apple is reasonable and comports with traditional notions of fair play and substantial justice.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Apple has committed acts of infringement in this district and has regular and established places of business in this district.

## PARTIES

9. FaceToFace is a Delaware Corporation with its principal place of business in this judicial district.

10. Apple is a California Corporation with at least two physical regular and established places of business in this judicial district.[3]

11. Apple is registered to do business in the State of Missouri and can be served through its registered agent at 5661 Telegraph Rd, Ste 4B, Saint Louis, Missouri 63129.

## FACTS

### A. The ’263 Patent

12. The ’263 Patent, entitled “Message Sender Security in Messaging System,” was duly and legally issued on January 27, 2026, with a priority date of March 10, 2014, and names Eric Leuthardt and Scott Stern as the inventors. Attached as *Exhibit 2* is a true and accurate copy of the ’263 Patent.

13. FaceToFace is the assignee of the entire right, title, and interest in the ’263 Patent.

---

[3] *Apple Retail Stores, United States*, APPLE, https://www.apple.com/retail/storelist/ (last visited on May. 21, 2026).

14. The ’263 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

15. The ’263 Patent covers systems and methods of providing security and privacy for a message sender. For example, the ’263 Patent covers a system for monitoring a data feed from a sensor of a device, such as the camera of a smartphone. A biometric recognition process is used to detect a biometric pattern that matches a biometric profile model associated with the recipient account. Once the detected biometric feature is validated in view of the stored biometric profile model, the system can deactivate a privacy shield to reveal the content of the electronic message.

16. The '263 Patent addresses specific technical limitations of prior-art mobile-device security. As described in the patent’s specification, conventional mobile-device security relied on a full screen lock unlocked by a passcode, which (a) “prevents access to other applications on the mobile device, making it unnecessarily inconvenient,” and (b) depends on a passcode, which “is knowledge that is transferable, and hence may be stolen,” unlike biometric data tied uniquely to a person. The '263 Patent claims a specific technical solution to these identified shortcomings, as described in the following paragraphs.

17. Unlike a conventional full-device screen lock, which blocks access to the entire device until the user enters a passcode, the ’263 Patent claims a specific architecture that gates only the content of an incoming electronic message while continuing to simultaneously display the sender’s identifying information, “independent of any user interaction”—that is, automatically, without the user opening the messaging application or otherwise triggering any action. Only the message content, and not general device access, is withheld until biometric validation succeeds. This selective, automatic, content-level (as opposed to device-level) gating is a specific technical means claimed in at least Claims 1, 11, and 18 of the ’263 Patent.

18. The ’263 Patent’s specification further identifies a qualitatively different technical benefit that departs from conventional recipient-side security: “[u]nlike the conventional security mechanism that only protects privacy of the user of the recipient user device, the disclosed biometric security mechanism also protects the privacy and security of the sender of the message,” enabling “a new paradigm of protection for stakeholders (e.g., the message senders), who are conventionally hopelessly dependent on the message recipients to protect their interests.” No conventional recipient-side screen lock protected the interests of the sender of a message, as opposed to the person holding the device. The claimed architecture's protection of a third party who has no control over the receiving device is a distinct technical capability that differentiates the '263 Patent's claims from prior-art device-security approaches.

19. The ’263 Patent further claims specific technical safeguards against a specific, described vulnerability: a validated recipient physically showing or repositioning the device so that an unauthorized third party can view the shielded content. The specification explains that the claimed system can supplement the biometric recognition process with a motion sensor, so that when device motion indicates a change in orientation, the privacy shield is reactivated to protect the message content and can further detect whether more than one individual is present in the sensor feed and prevent disclosure of the content if so. These claimed technical features address a specific identified vulnerability in the prior art and are recited in at least dependent Claims 4, 5, 14, and 15 of the ’263 Patent.

20. Taken together, the claims of the '263 Patent recite a specific technical architecture comprising: simultaneous, automatic, content-level (not device-level) gating of incoming message content; protection of the message sender’s privacy interest at a device the sender does not control; and supplemental, sensor-based safeguards against unauthorized

viewing when the device is shown or repositioned. This combination of claimed features is technically distinct from prior-art device-security mechanisms, which did not perform content-level, sender-protective, automatic gating of an incoming message in this manner.

21. These technical distinctions are confirmed by the '263 Patent's prosecution history. During prosecution, the Examiner initially rejected all claims as obvious over U.S. Patent Application Publication No. 2002/0116508 ("Khan") in view of U.S. Patent Application Publication No. 2014/0157424 ("Lee"). In response, the applicant distinguished Khan on the ground that its "virtual envelope" reveals the subject of the message and therefore does not simultaneously display a true privacy shield and sender identifying information, and distinguished Lee on the ground that its privacy mode is deactivated only upon user interaction (e.g., the user touching the screen), unlike the claimed invention's automatic, "independent of any user interaction" gating. After considering these arguments together with the prior art of record, the Examiner allowed all claims, expressly finding that the limitations requiring the receiver device to "validate biometric data of the user in view of a stored biometric profile of the user; and instruct[] the receiver computer device[] to remove the privacy shield from the display screen and to display... the electronic content of the electronic message if the biometric data of the user is validated," considered together with the dependent claim limitations, were "not taught nor suggested by the prior art of record." The Examiner's finding that no cited reference discloses or suggests this specific claimed architecture, even in combination, confirms that the technical features described in the preceding paragraphs distinguish the '263 Patent's claims from prior-art systems.

**B. Apple's Infringing Activities and Products**

22. Apple has infringed and continues to infringe the '263 Patent by making, using, selling, and/or offering for sale the Infringing Devices in the United States, including in this judicial district, and importing into the United States the Infringing Devices that are sold in this judicial district.

23. The Infringing Devices include iPhones capable of Face ID or Touch ID and operating on iOS 11 or later (the "Infringing iPhones"), iPads capable of Face ID or Touch ID and operating on iOS 11 or later (the "Infringing iPads"), and MacBooks and Macs capable of Touch ID and operating on macOS 11, Big Sur, or later (the "Infringing Laptops and Desktops"). A more detailed list of the Infringing Devices is provided in *Exhibit 1*.

24. Apple has been aware of the family of patents to which the '263 Patent belongs, at least as of April 13, 2022, when a complaint was filed alleging Apple's infringement of a different patent in the same family.

25. To the extent Apple did not have knowledge, Apple has had knowledge of its infringement of the '263 Patent at least as of the date of service of the present Complaint. Since acquiring that knowledge, should Apple continue to make, use, sell, offer for sale, or import the Infringing Devices, Apple will have known or should have known that this conduct constitutes infringement of the '263 Patent.

26. The feature to control how notification previews are displayed on lock screens was made available to Infringing iPhones and Infringing iPads through the iOS 11 update, which was released on September 19, 2017.[4]

---

[4] *iOS 11 is Available Tomorrow,* APPLE NEWSROOM (Sep. 18, 2017) https://www.apple.com/newsroom/2017/09/ios-11-available-tomorrow/; *Apple iPhone iOS 11 User Guide PDF (iPhone 8/iPhone X manual)*, APPLE (Jan. 1, 2018), https://archive.org/details/apple-iphone-ios-11-iphone-8-iphone-x-manual/page/n57/mode/2up.

27. The feature to control how notification previews are displayed on lock screens was made available to Infringing Laptops and Desktops through the macOS 11-Big Sur update, released on November 12, 2020.[5]

28. Apple instructs users on how to control notification previews on lock screens for the Infringing Devices.[6]

29. The feature to control notification previews on lock screens enables users to shield the notification preview until Face ID or Touch ID functions are used to unlock the device. For example, when the notification preview is covered, a privacy shield displaying "iMessage" is shown alongside some sender information, such as the sender's name. Once the device successfully validates a user via Face ID or Touch ID, the shield is removed, and the notification preview becomes visible.

---

[5] *macOS Big Sur is Here*, APPLE NEWSROOM (Nov. 12, 2020), https://www.apple.com/newsroom/2020/11/macos-big-sur-is-here/; *Change Notifications Preference on Mac*, APPLE, https://support.apple.com/is-is/guide/mac-help/mh40583/11.0/mac/11.0 (last visited May 26, 2026).

[6] *Use Notifications on Your iPhone or iPad*, APPLE (Apr. 06, 2026), https://support.apple.com/en-us/108781; *Change Notification Settings on iPhone*, APPLE: IPHONE USER GUIDE, https://support.apple.com/guide/iphone/change-notification-settings-iph7c3d96bab/ios (last visited July 6, 2026); *Change Notification Settings on Mac*, APPLE: MAC USER GUIDE, https://support.apple.com/en-sg/guide/mac-help/mh40583/mac (last visited July 6, 2026).




(Screenshot of active privacy shield on left and removed privacy shield on right)

30. The Infringing Devices have a processor and a memory.

31. The Infringing Devices' memory have computer-executable instructions.

32. The Infringing iPhones and Infringing iPads are capable of operating on iOS 11 or later. The Infringing Laptops and Desktops are capable of operating on macOS 11.0-Big Sur, or later.

33. At least sixty-three of the Infringing Devices are advertised as compatible with Apple's Magic Keyboard with Touch ID, including but not limited to iMac (24-inch, M1, 2021), iMac (24-inch, 2023, Two Ports), and Mac Studio (2022).[7] At least the Mac Pro (2023), Mac Pro (Rack, 2023), iMac (24-inch, 2023, Four Ports), and iMac (24-inch, 2024, Four Ports) are sold

---

[7] *Magic Keyboard with Touch ID for Mac Models with Apple Silicon (USB-C) – US English*, APPLE: ACCESSORIES, https://www.apple.com/shop/product/mxck3ll/a/magic-keyboard-with-touch-id-for-mac-models-with-apple-silicon-usb-c-us-english (last visited July 6, 2026).

with a Magic Keyboard with Touch ID included in the box.[8] The Magic Keyboard with Touch ID used in combination with an Infringing Device directly infringe the ’263 Patent.

34. The User Guide of the Magic Keyboard with Touch ID instructs users to “update [their] Mac to the latest version of macOS,” including macOS 11.0-Big Sur, or later, to use the full range of features, including the use of Touch ID to set up a biometric profile.[9]

35. The Infringing Devices can receive and send electronic messages. They use either Face ID or Touch ID for security measures, including shielding notification previews until a user has been validated.

36. To use either Face ID or Touch ID, the Infringing Devices require the user to set up a biometric profile, against which future access attempts are compared. Biometric features of individuals—including facial features and fingerprints—are stored in user profiles.[10] When a user attempts to access the Infringing Device through either Face ID or Touch ID, the Infringing Device detects a biometric feature, then compares the detected biometric feature with the stored user profile. When a match is successful, the “iMessage” shield is removed, making the notification preview visible.

37. Apple has been infringing by actively making using, selling, offering for sale, or importing the Infringing Devices that infringe the ’263 Patent.

---

[8] *Mac Pro (2023) – Tech Specs*, APPLE: DOCUMENTATION, https://support.apple.com/en-us/111343 (last visited July 6, 2026); *Mac Pro (Rack, 2023) – Tech Specs*, APPLE: DOCUMENTATION, https://support.apple.com/en-us/111836 (last visited July 6, 2026); *iMac (24-inch, 2023, Four ports) – Tech Specs*, APPLE: DOCUMENTATION https://support.apple.com/en-us/117734 (last visited July 6, 2026); *iMac (24-inch, 2024, Four ports) – Tech Specs*, APPLE: DOCUMENTATION, https://support.apple.com/en-us/121557 (last visited July 6, 2026).

[9] *Ma2010 Magic-Keyboard-TouchID-UG*, APPLE: DOCUMENTATION (2021) https://cdsassets.apple.com/live/6GJYWVAV/user/ma2010_magic-keyboard-touchid-ug.pdf.

[10] *Biometric Security*, APPLE PLATFORM SECURITY, https://support.apple.com/en-au/guide/security/sec067eb0c9e/1/web/1 (last visited May 26, 2026); *Facial Matching Security*, APPLE PLATFORM SECURITY, https://support.apple.com/en-au/guide/security/sece151358d1/1/web/1 (last visited May 26, 2026); *About Touch ID Advanced Security Technology*, APPLE, https://support.apple.com/en-us/105095 (last visited May 26, 2026); *Ma2010 Magic-Keyboard-TouchID-UG*, APPLE: DOCUMENTATION (2021) https://cdsassets.apple.com/live/6GJYWVAV/user/ma2010_magic-keyboard-touchid-ug.pdf.

38. Apple has been and is inducing infringement of the ’263 Patent by actively and knowingly inducing purchasers and owners of Infringing Devices to infringe the ’263 Patent by making and using these devices.

39. Apple takes active steps to induce others, including customers and end users of the Infringing Devices, to directly infringe the ’263 Patent. Specifically, Apple provides support documents that instruct and aid customers and end users on how to operate the Infringing Devices to use Face ID or Touch ID to control notification previews until biometric validation,[11] resulting in direct infringement of the ’263 Patent by those customers and end users. Apple takes these actions knowing, at least as of the date of service of this Complaint, that the instructed conduct constitutes infringement of the ’263 Patent, and with specific intent that customers and end users infringe the ’263 Patent by following Apple’s instructions.

40. Apple sells, offers to sell, and imports into the United States the Magic Keyboard with Touch ID, which contain a biometric sensor constituting a material part of the invention claimed in the ’263 Patent. Apple knows that the biometric sensor in the Magic Keyboard with Touch ID is especially made or especially adapted for use in combination with the Infringing Devices to infringe the ’263 Patent, including the sensor’s specific function of enabling biometric validation to deactivate a privacy shield. Customers who purchase the Magic Keyboard with Touch ID and use it in combination with an Infringing Device directly infringe the ’263 Patent.

---

[11] *See, e.g.*, *Magic Keyboard with Touch ID*, MAC STUDIO, https://support.apple.com/en-au/guide/security/sec067eb0c9e/1/web/1 (last visited July 6, 2026); *Use Touch ID on Mac*, MAC USER GUIDE, https://support.apple.com/en-in/guide/mac-help/mchl16fbf90a/mac (last visited July 6, 2026); *Notification Settings on Mac*, MAC USER GUIDE, https://support.apple.com/en-in/guide/mac-help/mh40583/26/mac/26 (last visited July 6, 2026).

41. The Infringing Devices infringe at least Claims 1, 2, 4, 7, 8, 11, 12, 14, 16, 17, 18, and 20. The Infringing iPhones and Infringing iPads further infringe at least Claims 3, 10, 13, and 19. The Infringing iPhones further infringe at least Claim 6. Collectively, at least one category of Infringing Device infringes each of Claims 1, 2, 3, 4, 6, 7, 8, 10, 11, 12, 13, 14, 16, 17, 18, 19, and 20, as further alleged in Count I below.

42. Because this feature continues to be offered in updates of the iOS and macOS, there is reason to believe that future iterations of the Infringing Devices will also infringe the ’263 Patent.

**COUNT I**
(Infringement of the ’263 Patent)

43. FaceToFace repeats and realleges each of the preceding paragraphs as though fully set forth herein.

44. Apple has been and is infringing the ’263 Patent, including at least claims 1, 2, 3, 4, 6, 7, 8, 10, 11, 12, 13, 14, 16, 17, 18, 19, and 20, by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Infringing Devices in violation of 35 U.S.C. §§ 271(a) through (c). Apple’s infringement has been and continues to be willful, in light of Apple’s knowledge of the ’263 Patent and its infringement thereof as alleged above, entitling FaceToFace to enhanced damages pursuant to 35 U.S.C. § 284.

45. Apple’s acts of infringement of the ’263 Patent have caused and will continue to cause FaceToFace damages for which FaceToFace is entitled to compensation pursuant to 35 U.S.C. § 284.

46. Apple's acts of infringement of the '263 Patent have caused and will continue to cause immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. FaceToFace has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, FaceToFace Biometrics Inc. requests judgment against Apple, Inc., as follows:

A. Adjudging that Apple has infringed and actively induced infringement of the '263 Patent, in violation of 35 U.S.C. §§ 271(a) through (c);

B. Granting an injunction permanently enjoining Apple, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '263 Patent absent a license to Apple by FaceToFace;

C. Ordering Apple to account and pay damages adequate to compensate FaceToFace for Apple's infringement of the '263 Patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

D. Ordering an accounting for any infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales;

E. Declaring this case exceptional if discovery and evidence in this matter so warrant, and awarding FaceToFace its reasonable attorney fees, pursuant to 35 U.S.C. § 285; and

F. Awarding such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Date: September 28, 2026

Respectfully Submitted,

**THE SIMON LAW FIRM, P.C.**

*/s/ Anthony G. Simon*
Anthony G. Simon, 38745(MO)
Jeremiah W. Nixon, 67148(MO)
W. Bret Sullivan, 73967(MO)
1001 Highlands Plaza Drive, Suite 300
St. Louis, Missouri 63110
Phone: (314) 241-2929
Fax: (314) 241-2029
asimon@simonlawpc.com
jnixon@simonlawpc.com
bsullivan@simonlawpc.com

**HUSCH BLACKWELL LLP**

Rudolph A. Telscher, Jr.
rudy.telscher@huschblackwell.com
8001 Forsyth Blvd., Ste 1500
St. Louis, MO 63105
Telephone: (314) 345-6227

Jeffer Ali
jeffer.ali@huschblackwell.com
90 South 7th Street, Floor 14
Minneapolis, MN 55402
Telephone: (612) 852-3610

*Attorneys for Plaintiff*